UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARMALITA CARTER,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2673** |
| **STRATEGIC RESTAURANT ACQUISITION CO. LLC, ET AL.**  Defendants | **SECTION: "E"(5)** |

## ORDER AND REASONS

Before the Court are two motions filed by Plaintiff Carmalita Carter ("Plaintiff"): (1) a motion to remand,[1] and (2) a motion to dismiss.[2] Both motions are opposed.[3] For the reasons that follow, the motions are **DENIED**.

## BACKGROUND

This case arises from an alleged slip-and-fall incident at a Burger King restaurant located on Chef Menteur Highway in New Orleans, Louisiana.[4] According to the Plaintiff, at approximately 11:00 a.m. on December 4, 2014, she entered the Burger King restaurant and proceeded to the women's restroom.[5] Plaintiff maintains that, upon entering the restroom, she "slipped and fell in a puddle of what appeared to be soapy water."[6] Plaintiff alleges, as a result, she "injured her left arm, shoulder, low back and neck."[7]

On November 16, 2015, Plaintiff filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana, against (1) Strategic Restaurant Acquisitions Company, LLC ("Strategic"), the owner of the Burger King restaurant where the incident occurred,

---

[1] R. Doc. 10.
[2] R. Doc. 13.
[3] R. Docs. 17, 19. In addition, both parties were granted leave of court to file supplemental briefing with respect to Plaintiff's motion to remand. *See* R. Docs. 23, 26.
[4] *See* R. Doc. 1-5 at 3; R. Doc. 1 at 1.
[5] R. Doc. 1-5 at 4.
[6] R. Doc. 1-5 at 4.
[7] R. Doc. 1-5 at 4.

and (2) John Doe, the "manager or person in charge of the Burger King and its premises."[8] Strategic was served with the lawsuit on January 20, 2016.[9] On March 31, 2016, Strategic removed the action to federal court on the jurisdictional basis of diversity of citizenship. Plaintiff then filed a motion to remand to state court on April 8, 2016, arguing Strategic's removal was not timely under 28 U.S.C. § 1446.[10] Also, on April 13, 2016, Plaintiff filed a motion to dismiss Strategic's petition for removal on the grounds that Strategic failed to properly allege its citizenship for purposes of diversity jurisdiction.[11]

## LAW AND ANALYSIS

I. <u>MOTION TO DISMISS PETITION FOR REMOVAL</u>

Plaintiff moves to dismiss Strategic's petition for removal, arguing Strategic failed to properly allege its citizenship for purposes of federal diversity jurisdiction.[12] Strategic filed its initial petition for removal on March 31, 2016.[13] In the removal petition, however, Strategic failed to correctly plead its citizenship. Strategic, formally known as Strategic Restaurants Acquisition Company, asserted in the petition for removal that is a "foreign[] limited liability company, domiciled in the state of Delaware with its principal place of business in the state of California."[14] However, this is not the proper manner in which to allege the citizenship of a limited liability company.[15] Instead, the citizenship of a limited liability company is determined by the citizenships of all of its members.[16] If one of its members is an LLC or a partnership, the citizenships of that entity's members or partners

---

[8] *See generally* R. Doc. 1-5.
[9] R. Doc. 1-5 at 1.
[10] R. Doc. 10.
[11] R. Doc. 13.
[12] R. Doc. 13-1 at 2. Plaintiff acknowledges that Strategic, by order of the Court, filed an amended notice of removal, maintaining the amended notice and the allegations therein are also deficient. R. Doc. 13-1 at 1.
[13] R. Doc. 1.
[14] R. Doc. 1 at 1.
[15] *See generally Greenville Imaging, LLC v. Washington Hosp. Corp.*, 326 F. App'x 787 (5th Cir. 2009).
[16] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080–81 (5th Cir. 2008).

must continue to be traced until an individual and/or a corporation is reached.[17] Strategic's March 31, 2016 petition for removal did not identify its members, and the Court was thus unable to determine, based on the petition for removal, whether the parties were diverse for purposes of subject-matter jurisdiction under 28 U.S.C. § 1332.

The Court ordered Strategic to amend its petition for removal to properly allege its citizenship. Strategic did so, filing an amended notice of removal on April 8, 2016.[18] In the amended notice, Strategic alleged it is a limited liability company and a "wholly owned subsidiary of SRAC Holding I, Inc., a Delaware [c]orporation, whose principal place of business is located in California."[19] Stated differently, Strategic's *sole member* is SRAC Holding I, Inc., which is a citizen of Delaware and California.[20] Therefore, Strategic, too, is a citizen of California and Delaware. Plaintiff Carmalita Carter is a citizen of Louisiana, and is thus diverse from Strategic.[21] The parties are completely diverse,[22] and Plaintiff's motion to dismiss on that basis must be denied.

II. M̲O̲T̲I̲O̲N̲ ̲T̲O̲ R̲E̲M̲A̲N̲D̲ ̲A̲S̲ U̲N̲T̲I̲M̲E̲L̲Y̲

The parties to this action are completely diverse,[23] and there is no dispute that the requisite amount in controversy, exclusive of interest and costs, exceeds $75,000.[24] The

---

[17] *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009).
[18] R. Doc. 12.
[19] R. Doc. 12 at 3.
[20] *See, e.g., Nationstar Mortgage LLC v. Baker*, No. 4:15-cv-00455, 2015 WL 5908534, at *2 (E.D. Tex. Sept. 18, 2015) ("Nationstar is a limited liability company headquartered in Texas that is 'wholly owned by two Delaware limited liability companies – Nationstar Sub1 LLC and Nationstar Sub2 LLC –that are in turn wholly owned by Nationstar Mortgage Holdings Inc., a Delaware corporation with its principal place of business in Texas.' Because Nationstar Mortgage Holdings Inc. is a Delaware corporation with its principal place of business in Texas, it is a citizen of Delaware and Texas for diversity purposes. Without any evidence from Defendant to the contrary regarding the citizenship of Plaintiff's members, Plaintiff Nationstar Mortgage LLC is thus considered a citizen of Delaware and Texas for diversity purposes.").
[21] *See* R. Doc. 1-5 at 3; R. Doc. 1 at 3.
[22] Defendant John Doe is an unidentified, unserved party. His presence as a named defendant is ignored for purposes of assessing the presence of complete diversity. *See, e.g., Harvey v. Shelter Ins. Co.*, No. 13-392, 2013 WL 1768658 (E.D. La. Apr. 24, 2013); *Westley v. Allstate Ins. Co.*, No. 06-8288, 2007 WL 442221 (E.D. La. Feb. 6, 2007).
[23] *See supra* notes 20–22 and accompanying text.
[24] *See generally* R. Docs. 10, 19, 23, 26.

sole dispute with respect to the motion to remand is whether Strategic's removal of this action was *timely*. The timing of removal is governed by 28 U.S.C. § 1446, which sets forth, in effect, a two-part test for analyzing whether the removal of an action is timely. First, the court must determine whether the action was removable as initially filed. Section 1446(b)(1) states:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the action was not removable as initially filed, the court then must evaluate whether the case became removable at a later time and, if so, when. Section 1446(b)(3) provides that:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

a. *Section 1446(b)(1) – Removable as Initially Filed*

First, the Court must determine whether the case was removable as initially filed. In making this determination, the Court looks to the initial pleading, the state court petition.[25] To be removable as initially filed, the state court petition must "affirmatively reveal[] on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."[26] Even in Louisiana, where pleading a specific

---

[25] *See, e.g., Quest v. Church Mut. Ins. Co.*, No. 13-4872, 2013 WL 6044380, at *1 (E.D. La. Nov. 13, 2013); *Seaux v. Wal-Mart Stores, Inc.*, No. 6:06CV0909, 2006 WL 2460843, at *1–2 (W.D. La. Aug. 22, 2006).

[26] *See, e.g., Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161–62 (5th Cir. 1992); *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 (5th Cir. 2013) ("Notably, there seems to be no Fifth Circuit case since *Chapman* that calls into question its bright line rule for timeliness disputes. Thus, the rule remains that the thirty-day clock is not triggered unless the initial pleading 'affirmatively reveals on its face' that the plaintiffs sought damages exceeding the jurisdictional amount."); *Clark v. Dolgencorp, LLC*, No. 13-2336, 2014 WL 458220, at *3 (W.D. La. Feb. 4, 2014).

amount of damages is prohibited by law,[27] the state court petition must affirmatively state that the amount in controversy *exceeds* the federal jurisdictional amount, otherwise the 30-day removal window does not begin to run upon service of the initial pleading.[28] In fact, Louisiana Code of Civil Procedure article 893(A) states, in part:

> No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. . . . except that if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages, . . . a general allegation that the claim exceeds or is less than the requisite amount is required.[29]

The state court petition in this action conforms to article 893(A) in that it does not include an allegation of the specific amount of damages sought, but the petition does not conform to the extent it does not include an allegation that the amount of damages exceeds or is less than the federal jurisdictional amount.[30] Instead, the petition includes only general damages allegations without expressing that the amount of Plaintiff's damages exceeds $75,000. For example, the petition alleges Plaintiff "slipped and fell,"

---

[27] LA. CODE. CIV. PROC. art. 893.

[28] *See, e.g., Green v. Geico Gen. Ins. Co.*, No. 15-3968, 2015 WL 5971760, at *4 (E.D. La. Oct. 14, 2015) ("Plaintiff did not allege specifically that the amount in controversy exceeded the minimum amount required to invoke a federal court's diversity jursidcition. Louisiana law prohibited Plaintiff from alleging a specific amount of monetary damages, but Plaintiff could have stated that the federal amount in controversy requirement was satisfied. Because Plaintiff failed to do so, the thirty-day removal clock did not begin running when GEICO was served with the petition."); *Scott v. Office Depot, Inc.*, No. 14-791-JJB-RLB, 2015 WL 2137458, at *4 n.1 (M.D. La. May 7, 2015) (citations omitted) ("Pursuant to *Chapman*, if a plaintiff wants the 30-day period to run from the defendant's receipt of the initial pleading, a plaintiff should place in that pleading 'a specific allegation that damages are in excess of the federal jurisdictional amount.' Such a statement would provide notice to defendants that the removal clock had been triggered, but would not run afoul of state laws, such as Louisiana, that prohibit pleading unliquidated damage amounts."); *Payne v. Forest River, Inc.*, No. 13-679-JJB-RLB, 2014 WL 1120251, at *3 (M.D. La. Mar. 20, 2014) (citing *Chapman*, 969 F.2d at 163) ("Plaintiffs alleged unspecified amounts of categorical damages, consistent with Louisiana's state court practice. Plaintiffs are therefore incorrect, as a matter of law, that the 30-day time period for removal began to run when Defendant received service."); *Carson v. Allstate Indem. Co.*, No. 09-60-C, 2009 WL 1146996, at *2 (M.D. La. Apr. 23, 2009) ("Carson did not (and could not, under Louisiana law) allege a specific monetary amount of damages in the petition and merely alleged that his damages exceeded $50,000. Thus, based solely upon the ambiguous description of Carson's damages in the petition, Allstate did not have a reasonable basis for removing the action to this Court within thirty (30) days of being served with the petition.").

[29] LA. CODE. CIV. PROC. art. 893.

[30] *See id.*; *see also generally* R. Doc. 1-5.

injuring her "left arm, shoulder, low back and neck."[31] It also states that Plaintiff seeks damages for (1) past, present, and future pain and suffering, (2) past, present, and future mental anguish and mental pain and suffering, (3) past, present, and future lost income, lost wages, and loss of earning potential, (4) past, present, and future medical expenses, and (5) future disability.[32] General allegations such as these, without an explicit allegation that the amount of damages exceeds the federal jurisdictional amount, are not sufficient to commence the running of the 30-day removal window based on the initial pleading under Section 1446(b)(1). This action was not removable as initially filed.

b. *Section 1446(b)(3) – Removable at a Later Time*

Because the case was not initially removable based on the state court petition, the Court must determine when the 30-day removal window began to run. Section 1446(b)(3) provides the analytical framework. Under 28 U.S.C. § 1446(b)(3), the 30-day window begins to run "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." To trigger the commencement of the 30-day removal window under this section, the "information supporting removal contained in the other paper must be *unequivocally clear and certain*."[33] The Fifth Circuit has stated:

> This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of

---

[31] R. Doc. 1-5 at 4.
[32] R. Doc. 1-5 at 5.
[33] *Fortenberry v. Prine*, No. 2:14-CV-56-KS-MTP, 2014 WL 2993668, at *2 (S.D. Miss. July 2, 2014) (emphasis added) (internal quotation marks omitted) (quoting *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)). *See also Cole v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011); *Darensburg v. NGM Ins. Co.*, No. 14-1391, 2014 WL 4072128, at *2 (E.D. La. Aug. 13, 2014); *Muse v. Lowe's Home Centers, Inc.*, No. 2:11-cv-01481, 2011 WL 5025326, at *3 (E.D. La. Oct. 21, 2011).

the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.[34]

Plaintiff identifies January 13, 2016, as the date on which the 30-day window began to run. According to Plaintiff, not only did Defendant receive a copy of the state court petition on that date, Defendant was also forwarded certain of Plaintiff's medical records, which included a surgery recommendation and an estimated cost of the surgery.[35] Plaintiff maintains, as of January 13, Defendant was in possession of the state court petition and had knowledge of Plaintiff's "need for expensive surgery," and it was thus evident that the amount in controversy exceeded $75,000.[36] Plaintiff argues the surgery cost "tens of thousands of dollars,"[37] but the records sent to Defendant on January 13 indicated the *projected* cost was approximately $19,000.00.[38] Moreover, it was not clear on January 13 whether the Plaintiff would definitely undergo surgery or, if she did, what the extent and nature of the surgery would be.[39] Based on the record before the Court, as of January 13, the Defendant knew only (1) that Plaintiff alleged miscellaneous injuries to her arm, shoulder, neck, and back; (2) that a surgery recommendation had been made; and (3) that the estimated cost of surgery was around $19,000. From what the Court can tell, the records transmitted as of January 13 did not include detailed information as to the extent of Plaintiff's injuries or her need for surgery, including whether surgery would be performed.[40] From this information alone, the Court finds that it was not

---

[34] *Bosky*, 288 F.3d at 211.
[35] R. Doc. 10-1 at 3.
[36] R. Doc. 10-1 at 3.
[37] R. Doc. 10-1 at 3.
[38] R. Doc. 10-7 at 1.
[39] *See Carter v. E-Z Mart Stores, Inc.*, No. 08-0727, 2009 WL 1788541, at *3 (W.D. La. June 23, 2009) ("[M]ere showing that surgery is a possibility at the time of removal is not sufficient evidence as to the jurisdictional amount in controversy.") (citing *Spiegel v. Alvi*, No. 08-5127, 2009 WL 1209012, at *1 (E.D. La. May 1, 2009); *Anderson v. Pep Boys-Manny, Moe, & Jack, Inc.*, No. 08-3861, 2009 WL 1269069, at *3 (E.D. La. May 6, 2009)).
[40] *See id.*

*unequivocally clear and certain* that the amount-in-controversy requirement exceeded $75,000 as of January 13, 2016.[41] The 30-day removal window did not begin to run on January 13, 2016.

It was not until March 15, 2016, that the Defendant learned more about Plaintiff's surgery, that she had actually undergone surgery, and, significantly, Plaintiff's refusal to stipulate to damages. On that date, Plaintiff transmitted additional medical records to the Defendant, which indicated that the total cost of the surgery was $23,393.34.[42] Also on March 15, Plaintiff refused to stipulate that her damages did not exceed the federal jurisdictional amount.[43] Defendant argues that, when Plaintiff provided medical records revealing her *actual medical expenses* and, at the same time, refused to stipulate to damages, it only then became clear and unequivocal that Plaintiff's alleged damages exceed $75,000.[44] The Court agrees. On March 15, 2016, it became clear and unequivocal that Plaintiff's alleged damages exceed $75,000, in light of (1) the actual cost of Plaintiff's surgery, which was greater than the initial cost estimate;[45] (2) Plaintiff's damages claims for past, present, and future pain and suffering, wage loss, medical expenses, and

---

[41] *See, e.g., Darensburg*, 2014 WL 4072128, at *4 ("[T]he February 17, 2014, email, which revealed accrued expenses of less than $12,000 and suggested that those expenses would increase over time, did not unequivocally show that the amount in controversy requirement was met."); *Muse*, 2011 WL 5025326, at *3 (finding surgery recommendation and medical expenses totaling $8,152.44 were insufficient to trigger the 30-day removal window); *Stovall v. California Cas. Indem. Exch.*, No. 11-83, 2011 WL 765822, at *3 (E.D. La. Feb. 24, 2011) (finding imprecise estimates of surgery costs, along with claims for general damages, penalties, and attorney's fees, insufficient to establish that the amount-in-controversy requirement was satisfied).
[42] R. Doc. 19-3 at 1–3.
[43] R. Doc. 19-2 at 1.
[44] R. Doc. 19 at 7.
[45] *See, e.g., Muse*, 2011 WL 5025326, at *1 ("On May 27, 2011, Defendant received Dr. Wyatt's surgical recommendation and estimate of surgical costs, which totaled over $29,000. The projected surgical costs, combined with Plaintiff's request for 'past and future wage loss, past and future medical costs, as well as hedonic and general damages' was sufficient to meet the jurisdictional minimum.").

disability;[46] and (3) Plaintiff's refusal to stipulate that her damages did not exceed $75,000.[47]

Because the Defendant removed this matter to federal court on March 31, 2016, within 30 days of March 15, removal was timely, pursuant to 28 U.S.C. § 1446(b)(3). The motion to remand must be denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion to dismiss the petition for removal be and hereby is **DENIED**.[48]

**IT IS FURTHER ORDERED** that Plaintiff's motion to remand this action to state court be and hereby is **DENIED**.[49]

**New Orleans, Louisiana, this 13th day of May, 2016.**

*[signature: Susie Morgan]*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[46] *See supra* note 44.
[47] "A refusal to stipulate to the amount of damages is a factor in determining the amount in controversy." *Penn v. Home Depot U.S.A., Inc.*, No. H-13-3083, 2013 WL 6859119, at *3 (S.D. Tex. Dec. 30, 2013) (citing *Johnson v. Dillard Dep't Stores, Inc.*, 836 F. Supp. 390, 394 (N.D. Tex. 1993)). *See also, e.g., Lopez v. Esparaza*, No. 2:14-cv-2231, 2014 WL 5025941, at *3 (W.D. La. Oct. 8, 2014) ("Plaintiff's affirmative act of amending the petition to state that his claim exceeded $50,000 together with the fact that plaintiff's chiropractor recommended future treatment and that plaintiff refused to stipulate that his damages did not exceed $75,000 are sufficient to satisfy the unequivocally clear and certain standard.").
[48] R. Doc. 13.
[49] R. Doc. 10.